Donald WILLIAMS, Appellant,

v.

**FEDERAL BUREAU OF INVESTIGA-
TION and United States Depart-
ment of Justice, Appellees.**

No. 94–5373.

United States Court of Appeals,
District of Columbia Circuit.

Nov. 14, 1995.

David H. Bodiker, Ohio Public Defender, and Dale A. Baich, Assistant State Public Defender, Ohio Public Defender Commission, were on the opposition to the motion for summary affirmance, for appellant.

Eric H. Holder, Jr., United States Attorney, R. Craig Lawrence, and Michael T. Ambrosino, Assistant United States Attorneys, were on the motion for summary affirmance, for appellees.

Before: SILBERMAN, SENTELLE, and TATEL, Circuit Judges.

## ON MOTION FOR SUMMARY AFFIRMANCE

PER CURIAM:

Donald Williams appeals an order of the district court granting summary judgment in favor of the Federal Bureau of Investigation and the United States Department of Justice in this action to compel disclosure of information pursuant to the Freedom of Information Act, 5 U.S.C. § 552 (1994). Because we agree that the government's invocation of FOIA exemption 7(D) is proper under *United States Department of Justice v. Landano,* —— U.S. ——, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993), we grant the Government's motion for summary affirmance.

I.

During the early 1970s, Williams served as Deputy Minister of Defense for Afro Set, a Cleveland-based black nationalist organization that the FBI considered extremist and violent. Afro Set was organized by former members of the Nationalist Party for Self Defense of New Libya, an organization which disbanded following the arrest in 1968 of several of its leaders on suspicion of instigating a Cleveland-area riot. The riot resulted in deployment of the National Guard and the deaths of law enforcement officers. According to FBI sources, Afro Set advocated hatred of white people and "outside" authority and had as its main goal the complete takeover and control of Cleveland's black community. The FBI therefore considered Afro Set a "threat to the internal security of this country." *See* Second Declaration of Regina M. Superneau ¶ 12 [hereinafter Second Superneau Decl.].

In December 1970, the FBI initiated a formal investigation of Afro Set based on information that the organization was "making plans to foment[ ] or stimulate[ ] racial disturbances." Second Superneau Decl. ¶¶ 9, 12. In particular, the FBI suspected Afro Set of violating 18 U.S.C. §§ 2383 (rebellion or insurrection), 2384 (seditious conspiracy), and 2385 (advocating overthrow of the government). As "Minister of Defense" and a leader of Afro Set, Williams was a target of the investigation.

The FBI based its belief that Afro Set was violent at least in part on evidence that the group illegally maintained and used firearms. For example, on October 20, 1970, Afro Set was involved in a disturbance which culminated in the indictment of Afro Set leader Harllel Jones for shooting and kidnapping a rival black nationalist. During a raid of Afro Set headquarters immediately following that incident, police seized a host of weapons and ammunition, including a 12-gauge sawed-off shotgun and a .30 caliber carbine. A year later police confiscated two pistols and six rifles during simultaneous raids of two Afro Set "shops."

As Afro Set's Defense Minister, Williams played an active role in arming Afro Set. A trace of the shotgun and the carbine seized

from Afro Set headquarters in October 1970 revealed that Williams had purchased them illegally, having failed to disclose a prior felony conviction. This illegal purchase was a federal offense for which Williams was formally charged. Williams was also arrested and charged with unlawful possession of weapons on at least two other occasions during his tenure as Afro Set's Defense Minister: in July 1971, he was arrested and charged with carrying a concealed weapon; and on August 19, 1971, FBI agents arrested Williams after determining that he was carrying a .22 caliber pistol and twenty-six cartridges of ammunition.

In October 1971, Williams, Afro Set leader Harllel Jones, and several other Afro Set members were charged with first degree murder for the August 7, 1970 shooting of two police officers. According to the indictment, Jones ordered the shooting to avenge the killing of an Afro Set member by a security guard. During the arrest of the suspects named in the indictment, police seized two AK 47 machine guns, a case of dynamite, four handguns, two machine gun barrels, homemade bombs, and various other paraphernalia allegedly used to discipline Afro Set members. Williams pled guilty to lesser charges. Although Harllel Jones was convicted of the murder, his conviction was later overturned because prosecutors had failed to turn over to the defense potentially exculpatory material as required by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *See Jones v. Jago,* 428 F.Supp. 405, 408–10 (N.D.Ohio 1977).

Following Williams's release from prison in 1973, the FBI closed its investigation of him. *See* Second Superneau Decl. ¶¶ 19–21. At roughly the same time, the FBI ended its surveillance of Afro Set, which had disintegrated after Jones's murder conviction. *See* Declaration of Robert Moran, exh. 2, pt. 1, doc. 26 [hereinafter Moran Decl.].

In 1984, Williams was convicted and sentenced to death for ordering the murder of a man who had robbed his girlfriend of money and illegal narcotics she was helping Williams distribute. *See State v. Williams,* No. 49185, 1986 WL 1905 (Ohio Ct.App. Feb.

13, 1986), *aff'd* 38 Ohio St.3d 346, 528 N.E.2d 910 (1988). Seeking information to help him in his challenge to his capital conviction, Williams in April and May 1989 requested copies of all records pertaining to him in the files at FBI Headquarters and at the FBI's Cleveland and Cincinnati field offices. The FBI released hundreds of documents, but withheld many on the ground that they contained information exempt from disclosure under FOIA law enforcement exemption 7(C), which guards against unwarranted invasion of privacy, and 7(D), which protects confidential sources. *See* 5 U.S.C. §§ 552(b)(7)(C), (D) (1994). Dissatisfied with the FBI's response, Williams sought to compel disclosure of the withheld information. After exhausting his administrative remedies, Williams filed suit in the district court. Following extensive briefing and the filing of numerous affidavits, the district court granted the Government's motion for summary judgment. *See Williams v. Federal Bureau of Investigation*, 822 F.Supp. 808 (D.D.C. 1993).

On appeal, we summarily affirmed the district court's determination that the records requested were compiled for legitimate law enforcement purposes and the district court's conclusion that the information withheld under exemption 7(C) is exempt from disclosure. *See Williams v. Federal Bureau of Investigation*, No. 93–5221, 1994 WL 36019 (D.C.Cir. Jan. 27, 1994). We remanded, however, for reconsideration of whether the documents withheld under exemption 7(D) are entitled to protection from disclosure in light of the Supreme Court's intervening decision in *Landano*. Under *Landano*, the government is not entitled to a presumption that all sources who supply information to the FBI in the course of a criminal investigation are confidential within the meaning of FOIA exemption 7(D). *Landano*, —— U.S. at ——–——, 113 S.Ct. at 2019–23.

Following our remand, the FBI reexamined the documents previously withheld under exemption 7(D). Attempting to comply with *Landano*, it released additional records to Williams but continued asserting the exemption with respect to others. The parties then filed cross-motions for summary judg-

ment. With its motion, the Government submitted an affidavit from FBI Special Agent Robert Moran explaining that the FBI withheld five categories of information on the ground that this information was obtained pursuant to express grants of confidentiality: (1) source symbols, file numbers, and dates of contact pertaining to confidential informants who reported information to the FBI on a regular basis; (2) names of confidential informants who reported information to the FBI on a regular basis; (3) information provided by confidential informants who reported information to the FBI on a regular basis; (4) identities of and information provided by individuals whose employment gave them access to information which they provided to the FBI; and (5) information provided by a financial institution. *See* Moran Decl. ¶¶ 11–16.

The Moran affidavit further stated that the FBI withheld four categories of information for which an implied assurance of confidentiality reasonably could be inferred: (1) identities of and information provided by individuals who were current or former members of Afro Set or related organizations; (2) identities of and information provided by nonfederal law enforcement agencies, where the information provided was of an intelligence nature and generally was not provided to the public; (3) identity of and information provided by a person whose employment gave him access to Afro Set and other extremist groups; and (4) information provided by an Ohio state employee which was so singular in nature that to release the information would divulge the source's identity. *See id.* ¶¶ 17–29.

Concluding that these categories of information remained exempt even under *Landano*, the district court granted the Government's motion for summary judgment and denied Williams's cross-motion.

## II.

We review orders granting summary judgment *de novo*. *Gallant v. NLRB*, 26 F.3d 168, 171 (D.C.Cir.1994). In FOIA cases, "this requires that we ascertain whether the agency has sustained its burden of demonstrating that the documents requested are … exempt from disclosure…." *Id.*

Summary judgment may be granted based on agency affidavits if " 'they contain reasonable specificity of detail rather than mere conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.' " *Id.* (quoting *Halperin v. CIA,* 629 F.2d 144, 148 (D.C.Cir.1980)).

■ Exemption 7(D) protects from mandatory disclosure records or information compiled for law enforcement purposes to the extent their production "could reasonably be expected to disclose the identity of a confidential source ... and, [in the case of a criminal or national security investigation], information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D) (1994). To determine whether FOIA exemption 7(D) applies, we thus ask whether the information was furnished by a confidential source during the course of a legitimate law enforcement investigation. *See Simon v. Department of Justice,* 980 F.2d 782, 784 (D.C.Cir.1992).

Williams argues that the withheld information was not compiled for a legitimate law enforcement purpose. In the first appeal of this case, however, we specifically determined that the FBI's investigation of Afro Set and its leaders had a legitimate law enforcement purpose. We see no reason to revisit that issue here. *See Crocker v. Piedmont Aviation, Inc.,* 49 F.3d 735, 739 (D.C.Cir.1995) (application of "law of the case" doctrine is proper where there has been no intervening change in the law, and appellant has not shown that the court's earlier conclusion is clearly erroneous). The only issue before us, then, is whether the sources who furnished the information were confidential.

■ A source is confidential within the meaning of exemption 7(D) if the source " 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.' " *Landano,* — U.S. at ———————, 113 S.Ct. at 2019–20 (quoting S.Rep. No. 1200, 93rd Cong., 2nd Sess. 13 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6267, 6291). In *Landano,* the Supreme Court explained: "A source should be deemed confidential if the source furnished information

with the understanding that the FBI would not divulge the communication except to the extent ... necessary for law enforcement purposes." *Id.* at ——, 113 S.Ct. at 2020.

■ Because the FBI obtained the five categories of information covered by paragraphs 11 through 16 of the Moran affidavit under express assurances of confidentiality, they are exempt from disclosure. To determine whether the four categories of information that the FBI obtained without express assurances of confidentiality are exempt from disclosure, we look to *Landano.* Although the Court rejected the view that all sources who supply information to the FBI in the course of a criminal investigation are presumed confidential, it nonetheless held that courts may infer confidentiality in certain narrowly defined circumstances. *See id.* at ——, 113 S.Ct. at 2023. According to *Landano,* the character of the crime and the source's relation to it are relevant factors in determining whether a source spoke to the FBI with the understanding that the source's cooperation would remain confidential. *Id.*

■ Applying *Landano* to the facts of this case, we find that the crimes the FBI suspected Afro Set of committing—rebellion or insurrection, seditious conspiracy, and advocating overthrow of the government—certainly qualify as serious offenses. The record is replete with documentation of violent crimes by Afro Set members, demonstrating Afro Set's willingness to use violence against its enemies. We also have no doubt that the sources were sufficiently close to Afro Set to justify inferring that they spoke to the FBI under implied assurances of confidentiality.

■ The record supports the Government's assertion that those who were, or recently had been, members of Afro Set and who supplied inside information about Afro Set to the FBI were at risk of retaliation, harassment, and bodily harm. *See* Moran Decl. ¶ 20. It is therefore reasonable to infer that those sources spoke to the FBI with the understanding that their cooperation would remain confidential. Similarly, the source whose employment provided access to information about Afro Set, *see id.* ¶ 28, risked

retaliation if the source's cooperation with the FBI became known. It is therefore reasonable to infer that this source spoke to the FBI under an implicit assurance of confidentiality.

 The next category, non-public information of an intelligence nature that local law enforcement agencies supplied to the FBI, *see id.* ¶¶ 22–26, may at first glance appear to include all information obtained by local police while investigating Afro Set's criminal activity. After *Landano,* such information is no longer presumed exempt. Yet the Moran affidavit makes clear why this information is exempt from disclosure in this case. Local law enforcement agencies were gathering "intelligence," that is, secret information, about Afro Set from confidential sources at the same time the FBI was investigating Afro Set. *See id.* ¶ 25. These local agencies shared their information with the FBI on the understanding that the FBI would not disclose it to the public, particularly because to do so might reveal the identity of sources to whom assurances of confidentiality had been made by local law enforcement officials. *Id.* ¶ 26. Sources that were so close to Afro Set that they could supply intelligence information to local law enforcement officials would have been vulnerable to retaliation if their cooperation had been disclosed. Accordingly, it is reasonable to infer that local law enforcement agencies shared information obtained from such sources with the expectation that the FBI would keep the information confidential.

 Finally, the information provided by an Ohio state employee, *see id.* ¶ 29, was so unique to the source that the source had reason to believe public disclosure of the information might subject the source to the risk of violent retaliation by Afro Set. Under these circumstances, it is reasonable to infer that the source provided this information to the FBI with the understanding that it would remain confidential.

### III.

The Government's nondisclosure of information under FOIA exemption 7(D) was proper under *Landano.* Accordingly, we summarily affirm the district court's order granting summary judgment for the Government.

*So ordered.*