**André L. MAYS a/k/a Abdul R. Wilson, Appellant,**

v.

**DRUG ENFORCEMENT ADMINISTRATION, Appellee.**

**No. 99–5334.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 26, 2000.

Decided Dec. 26, 2000.

Steven J. Kaiser, appointed by the court, argued the cause as amicus curiae on the side of appellant. With him on the briefs were Matthew D. Slater and Michael R. Lazerwitz.

André L. Mays, appearing pro se, was on the brief for appellant.

Michael J. Ryan, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were Wilma A. Lewis, U.S. Attorney, and R. Craig Lawrence, Assistant U.S. Attorney. Brian J. Sonfield, Assistant U.S. Attorney, entered an appearance.

Before: GINSBURG, RANDOLPH, and TATEL, Circuit Judges.

Opinion for the court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

André Mays was convicted of conspiring to distribute base and powder cocaine. He now invokes the Freedom of Information Act (FOIA), 5 U.S.C. § 552, to get from the Drug Enforcement Agency documents relating to its criminal investigation of him. The Government contends that it may withhold the information pursuant to FOIA Exemption 7(C), which protects the privacy interests of third parties, and Exemption (7)(D), which protects confidential information. We hold, under Exemption 7(D), that express and implied grants of confidentiality protect the reports of informants relating to Mays' conspiracy to traffic in cocaine. With respect to Exemption 7(C), we remand this matter for the district court to address Mays' argument that certain non-exempt information must be segregated and released.

## I. Background

After his conviction Mays asked the DEA for copies of all DEA records filed under his name or under the names of certain third parties. With respect to Mays' own file, the DEA responded by releasing portions of 14 pages; referring five pages to the FBI, all of which the FBI later released to Mays; and withholding 19 other pages under the claimed authority of the Privacy Act, 5 U.S.C. § 552a(j)(2), and Exemptions 2, 7(C), 7(D), and 7(F) of the FOIA. The DEA also denied Mays access to information in the files of third parties, citing the same provisions. In all, the DEA processed 44 pages in response to Mays' request, releasing five pages in their entirety, redacting and releasing 14 pages, and withholding 25 pages.

Mays filed this action in district court in order to compel release of the withheld information. The Government introduced into evidence the affidavit of Leila Wassom, a DEA paralegal, justifying the exemptions, along with a so-called *Vaughn* index, containing an itemized account of the disputed documents and of the exemption(s) and rationale(s) under which the DEA withheld or redacted each item. Mays conceded that the Government may withhold the items for which it invoked Exemptions 2 and 7(F), and both sides

moved for summary judgment as to the other items. The district court, believing that Mays challenged only the withholdings pursuant to Exemption 7(D), granted summary judgment for the Government. The court determined that some of the information in question is the subject of an express grant of confidentiality the DEA made to an informant, and that the DEA impliedly undertook to hold the remainder confidential in light of the danger faced by a cooperating individual who informs on drug traffickers.

Mays now appeals and, both *pro se* and through an amicus appointed by this court, challenges the Government's application of Exemptions 7(C) and 7(D). (We make no further distinction between the arguments of the appellant and those of the amicus in this court.) Mays concedes that Exemption 7(C) applies to names of third parties and to other identifying information, but contests both the Government's decision to withhold certain "investigative details" and its failure to segregate and to produce non-exempt information on pages that also contain exempt information. As for Exemption 7(D), he argues that there is insufficient evidence of an express grant of confidentiality, and that the nature of his crime by itself does not support an implied grant of confidentiality.

## II. Analysis

Contrary to the understanding of the district court, Mays properly contested the application of Exemption 7(C) in addition to that of Exemption 7(D). Therefore, we address his arguments with respect to each exemption.

### A. Exemption 7(C)

 Exemption 7(C) protects information the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b). As such, it reflects "the strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity." *Computer Professionals v. U.S. Secret Serv.,* 72 F.3d 897, 904 (D.C.Cir.1996). When information withheld by the Government implicates this interest, it becomes necessary to determine whether disclosure is warranted by "balanc[ing] the public interest in disclosure against the interest Congress intended the Exemption to protect." *DOJ v. Reporters Comm.,* 489 U.S. 749, 776, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). Because the FOIA is concerned with the right of the general public to know what their government is up to, the identity and interest of the party requesting the document are irrelevant to this balancing. *See id.* at 771, 109 S.Ct. 1468. Absent exceptional circumstances, the balance categorically favors withholding the names and addresses of third parties as "the type of information sought is simply not very probative of an agency's behavior or performance." *SafeCard Servs., Inc. v. SEC,* 926 F.2d 1197, 1205 (D.C.Cir.1991). Finally, Exemption 7(C) ordinarily permits the Government to withhold only the specific information to which it applies, not the entire page or document in which the information appears; any non-exempt information must be segregated and released, *see* 5 U.S.C. § 552(b), unless the "exempt and nonexempt information are 'inextricably intertwined,' such that the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value." *Neufeld v. IRS,* 646 F.2d 661, 666 (D.C.Cir.1981).

It is against this backdrop that Mays contests the Government's withholdings under Exemption 7(C). In his *pro se* opposition to the Government's motion for summary judgment, he conceded the legitimacy of redacting "names or other identifying symbols" but argued that "merely because an isolated portion of a document need not be disclosed does not make the entire document exempt from disclosure." This adequately presented the argument that under Exemption 7(C) only names

and other identifying information can be withheld.

Although the district court did not address this argument, we would affirm its grant of summary judgment if Mays could not prevail against the Government's factual showing. That, however, is not the case. In her affidavit Ms. Wassom establishes that "[s]ome of the documents ... contain names and addresses and other identifying information [exempt from disclosure]," and asserts that "information about the plaintiff is inextricably intertwined with third party information." She does not say, however, that all the "third party information" with which information about Mays is "inextricably intertwined" is itself exempt. Segregation may prove feasible when only that "third party information" actually protected under Exemption 7(C), such as the aforementioned "names and addresses and other identifying information," is excised.

The *Vaughn* index also leaves open the possibility that some of the "third party information" in question is unprotected. It repeatedly characterizes withheld information as "investigative details," but Exemption 7(C) does not necessarily cover all "investigative details"—a category presumably distinct from, and potentially far broader than, the "names of individuals/personal information" to which the *Vaughn* index elsewhere refers. Only the latter, narrower category of information is necessarily exempt. *See Nation Magazine v. Customs Serv.*, 71 F.3d 885, 895–96 (D.C.Cir.1995); *SafeCard Servs.*, 926 F.2d at 1206. The present record simply does not tell us whether and to what extent release of the "investigative details" referred to in the *Vaughn* index would reveal the identity or otherwise implicate the privacy interests of any third party.

Therefore, we must remand this aspect of the case for the district court to determine what information is actually protected under Exemption 7(C) and whether any intelligible portion of the contested pages can be segregated for release. Consistent with our precedent, the district court may review the disputed documents *in camera* in order to make this determination. *See Quiñon v. FBI*, 86 F.3d 1222, 1228 (1996).

**B. Exemption 7(D)**

Exemption 7(D) protects against the disclosure of "information furnished by a confidential source" and contained in a record "compiled by [a] criminal law enforcement authority in the course of a criminal investigation." 5 U.S.C. § 552(b). The applicability of the exemption in each case depends upon whether the particular source who furnished the information at issue was granted confidentiality, either expressly or by implication. *See DOJ v. Landano*, 508 U.S. 165, 172, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993).

**1. Express grant of confidentiality**

Mays argues, first, that the district court lacked adequate evidence to conclude that one source in this case received an express grant of confidentiality. This claim is without merit. Wassom's affidavit attributes four of the contested pages to a single "coded informant" and describes the DEA's standard practice of identifying confidential informants in this way. The *Vaughn* index confirms that each of the four pages is marked by the same "DEA confidential informant code." This evidence is cognizable and unrebutted.

Mays nonetheless maintains that the record is insufficient to support summary judgment for the Government in light of our recent explication of the evidence required:

> To withhold information under Exemption 7(D) by express assurances of confidentiality, the [Government] must present "probative evidence that the source did in fact receive an express grant of confidentiality." *Davin* [*v. DOJ*, 60 F.3d 1043, 1061 (3d Cir.1995) ]. Such evidence can take a wide variety of forms, *including* notations on the face of a withheld document, the personal

knowledge of an official familiar with the source, a statement by the source, or contemporaneous documents discussing practices or policies for dealing with the source or similarly situated sources.

*Campbell v. DOJ*, 164 F.3d 20, 34 (1998) (emphasis supplied). This obviously is not an exhaustive list. In any event, the *Vaughn* index in this case plainly refers to "notations on the face of [the] withheld document[s]"—specifically, the DEA confidential informant code—indicating that this source received an express assurance of confidentiality. The Government is therefore entitled to summary judgment with respect to the four pages so coded.

## 2. Implied grant of confidentiality

Mays argues, second, that the district court erred in concluding that an implied grant of confidentiality covers three pages attributable to a second source who, according to Wassom's affidavit, provided a local sheriff's office with information "about the drug trafficking activities of [Mays] and third parties." According to Wassom, because Mays "has been convicted of conspiracy to distribute cocaine and cocaine base .... [i]t is reasonable to infer that the individuals who provided information about [Mays] would fear for their safety if their identities or the information they provided was revealed." Indeed, the Government maintains that the crime of trafficking in cocaine is inherently so dangerous, and the relationship of any individual with information about it sufficiently close to the danger, that confidentiality should automatically attach in these circumstances.

In *DOJ v. Landano*, 508 U.S. 165, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993), the Supreme Court mapped the contours of the inquiry into implied confidentiality. It rejected the broad presumption urged by the Government there "that a source is confidential within the meaning of Exemption 7(D) whenever the source provides information to the FBI in the course of a criminal investigation." *Id.* at 181, 113

S.Ct. 2014. At the same time, the Court anticipated that "often" the Government would be able to point to "more narrowly defined circumstances that will support the inference." *Id.* at 179, 113 S.Ct. 2014. After instancing the case of paid informants, the Court acknowledged that "[t]here may well be other generic circumstances in which an implied assurance of confidentiality fairly can be inferred." *Id.* "For example, when circumstances such as the nature of the crime investigated and [the informant's] relation to it support an inference of confidentiality, the Government is entitled to a presumption." *Id.* at 181, 113 S.Ct. 2014.

In *Landano* the Court plainly contemplated making probability judgments in assessing whether an implied grant of confidentiality attaches to a particular type of source. To illustrate, the Court observed that"[m]ost people would think that witnesses to a gang-related murder likely would be unwilling to speak to the [FBI] except on the condition of confidentiality." 508 U.S. at 179, 113 S.Ct. 2014. We have since identified the crimes of "rebellion or insurrection, seditious conspiracy, and advocating overthrow of the government" as serious offenses that, when undertaken by a criminal enterprise with a record of violence, warrant the inference that an informant expects confidentiality. *Williams v. FBI*, 69 F.3d 1155, 1159–60 (1995).

 In this case the cooperating individual supplied information about a conspiracy to distribute crack and powder cocaine. The pertinent question is whether the violence and risk of retaliation that attend this type of crime warrant an implied grant of confidentiality for such a source. They most assuredly do.

This court knows all too well the violence and danger that accompany the cocaine trade. *See United States v. Payne*, 805 F.2d 1062, 1065 (1986) (firearms "are as much tools of the [drug] trade as more commonly recognized drug paraphernalia"); *Navegar, Inc. v. United States*, 192 F.3d 1050, 1058 (1999) (Congressional Rec-

ord establishes "disproportionate link between [assault] weapons and drug-trafficking and violent crime"); *United States v. Holland*, 810 F.2d 1215, 1219 (1987) (drug transactions "contribute directly to the violent and dangerous milieu that Congress sought to eliminate"). Indeed, for the same reasons that an informant would justifiably fear reprisal from a murderous street gang and expect the authorities to keep his information confidential, so too would an informant reasonably fear reprisal by conspirators to distribute cocaine; the two types of criminal enterprises are closely comparable in terms of their organization and their penchant for violence. *See* U.S. SENTENCING COMMISSION, SPECIAL REPORT TO THE CONGRESS: COCAINE AND FEDERAL SENTENCING POLICY 4 (1997) (trafficking in crack cocaine closely associated with "systemic crime … particularly the type of violent street crime so often connected with gangs, guns, serious injury, and death"); U.S. SENTENCING COMMISSION, SPECIAL REPORT TO THE CONGRESS: COCAINE AND FEDERAL SENTENCING POLICY 95–98 (1995) (chronicles empirics of violent crime, including "elimination of informers," that attends trafficking in crack and powder cocaine).

Indeed, our notion of what is reasonable police conduct has long reflected the heightened danger and risk of violence posed by cocaine trafficking. *See United States v. Bonner*, 874 F.2d 822, 827 (1989) (police justified in breaking down door in part because "entrance into a situs of [cocaine] trafficking carries all too real dangers to law enforcement"); *United States v. White*, 648 F.2d 29, 35 n. 29 (1981) (study of drugs and violence justifies police drawing weapons because "odds [are] too high to require policemen to play 'russian roulette' each time they effect a drug arrest"). Surely we must extend the same consideration to informants when they help a law enforcement agency combat this type of crime. To expose them to the real potential of retaliation at the hands of cocaine traffickers would be not only incongruous but also perverse.

Mays protests that the presumption urged by the Government is too broad, that it would cloak in confidentiality anything anyone ever tells a law enforcement officer about any drug crime. Not so: We speak here only of those informants who supply intelligence relating to the crime of conspiracy to distribute cocaine; the accumulated evidence and experience of this court bear most forcefully upon that specific offense.

Mays further objects that a presumption based solely upon the "character of the crime" effectively obviates consideration of "the source's relation to the crime." 508 U.S. at 179, 113 S.Ct. 2014. In *Landano* the Supreme Court said only that both character and relation—presumably whether the informant's "relation to the crime" puts him at risk of retaliation—"may be relevant," *id.*, not that the source need have any particular relationship to the crime in order for the information he supplies to be deemed confidential. Mays questions why, then, our decision in *Williams*, which involved crimes of a very violent nature, turned nonetheless in part upon evidence that (in Mays' words) "the particular sources were close to the group" responsible for the crimes. The answer is that with respect to certain sources we did not have any independent evidence that they were close to the group; we inferred that they were precisely because they had provided "information [that] was of an intelligence nature and generally was not provided to the public." 69 F.3d at 1158. We reasoned that if the sources could furnish such information then they surely would have been "vulnerable to retaliation if [their] cooperation had been disclosed." *Id.* at 1160. That hardly suggests that evidence of a close relationship between the source and the crime is required in order to infer confidentiality.

In sum, whatever his "relation to the crime," an informant is at risk to the extent the criminal enterprise he exposes is of a type inclined toward violent retalia-

tion. That a conspiracy to distribute cocaine is typically a violent enterprise, in which a reputation for retaliating against informants is a valuable asset, is enough to establish the inference of implied confidentiality for those who give information about such a conspiracy.

This is not to deny that there may be cases in which a person who provides information to the police, such as a neighborhood anti-crime crusader, might not expect or even want to be treated confidentially. Nonetheless, *Landano* plainly contemplates that courts will identify "generic circumstances in which an implied assurance of confidentiality fairly can be inferred." 508 U.S. at 179, 113 S.Ct. 2014. And we have no doubt that a source of information about a conspiracy to distribute cocaine typically faces a sufficient threat of retaliation that the information he provides should be treated as implicitly confidential.

### III. Conclusion

For the foregoing reasons we affirm the judgment of the district court with respect to Exemption 7(D), and remand this case for the district court to address, in a manner consistent with this opinion, Mays' claim with respect to Exemption 7(C).

*So ordered.*