# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 23, 2024   Decided July 16, 2024

No. 22-5231

BARBARA KOWAL,
APPELLANT

v.

UNITED STATES DEPARTMENT OF JUSTICE, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-02798)

———

*Matthew E. Kelley* argued the cause for appellant. On the briefs was *D. Todd Doss*, Assistant Federal Defender.

*Jeremy S. Simon*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Brian P. Hudak* and *Jane M. Lyons*, Assistant U.S. Attorneys.

———

2

No. 22-5287

BARBARA KOWAL,
APPELLANT

v.

UNITED STATES DEPARTMENT OF JUSTICE AND DRUG
ENFORCEMENT ADMINISTRATION, FREEDOM OF INFORMATION
REQUEST/PA UNIT,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-00938)

———

*Matthew E. Kelley* argued the cause for appellant. On the briefs was *D. Todd Doss*, Assistant Federal Defender.

*Jeremy S. Simon*, Assistant U.S. Attorney, argued the cause for appellees. With him on the brief were *Brian P. Hudak* and *Jane M. Lyons*, Assistant U.S. Attorneys. *Douglas C. Dreier*, Assistant U.S. Attorney, entered an appearance.

Before: HENDERSON, PILLARD, and RAO, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RAO.

RAO, *Circuit Judge*: Barbara Kowal filed Freedom of Information Act ("FOIA") requests with several law enforcement agencies. Unsatisfied by the agencies' disclosures, Kowal brought two suits claiming that the

agencies failed to make adequate searches and that they wrongfully withheld records. The district court granted summary judgment for the agencies in both cases. We affirm because the searches were adequate and the records were exempted from disclosure under FOIA.

I.

Kowal is a paralegal for a federal public defender representing Daniel Troya. Troya was sentenced to death for the "gangland-style" murder of a family of four on a highway roadside. *See United States v. Troya*, 733 F.3d 1125, 1136–37 (11th Cir. 2013). The murder was committed "to protect a large-scale drug trafficking ring involving drugs, guns and extensive violence." *Id*. at 1129. In his habeas proceedings, Troya asserted the government failed to disclose exculpatory material at his trial.

Seeking evidence to support Troya's claim, Kowal submitted identical FOIA requests to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), the Federal Bureau of Investigation ("FBI"), and the Drug Enforcement Administration ("DEA"), asking for "all documents, files, records, etc. pertaining to any investigation, arrest, indictment, conviction, sentencing, incarceration, and/or parole of … Daniel Troya (a/k/a 'Homer')." Kowal's requests included Troya's date of birth and information identifying his federal charges and criminal proceedings.

In response to Kowal's request, the agencies searched for responsive records. The DEA searched its centralized records system using Troya's name and date of birth and identified 418 responsive pages. The DEA produced 14 pages in full, 133 in part, and withheld 271. The ATF searched two of its internal records systems, using the keyword "Daniel Troya," and identified 480 responsive pages. The ATF produced 63 pages

in full, 223 in part, and withheld 194. The FBI searched its Central Records System using the terms "Daniel Anthony Troya" and "Homer Troya." The FBI identified 275 responsive pages, produced 134 pages (with some redactions), and withheld 141. In their *Vaughn* indices,[1] the agencies explained that they withheld information pursuant to FOIA Exemptions 3, 6, 7(C), 7(D), 7(E), and 7(F). *See* 5 U.S.C. § 552(b)(3), (6), (7)(C)–(F).

Dissatisfied with the responses, Kowal challenged the adequacy of the agencies' searches and alleged the agencies impermissibly withheld documents. After she exhausted her administrative remedies, Kowal filed two suits in federal court against components of the Department of Justice: one primarily against the FBI and the ATF, and another against the DEA. The district court granted summary judgment to the agencies. *See Kowal v. Dep't of Justice*, 2022 WL 2315535 (D.D.C. June 27, 2022); *Kowal v. Dep't of Justice*, 2022 WL 4016582 (D.D.C. Sept. 2, 2022). Kowal timely appealed. Because the legal and factual issues substantially overlap, we decide both appeals in a single opinion.

## II.

FOIA requires federal agencies, when requested, to disclose certain agency records unless an exemption applies. Pub. L. No. 89-487, 80 Stat. 250 (1966) (codified as amended at 5 U.S.C. §§ 552–59). Kowal challenges both the adequacy

---

[1] When relying on a FOIA exemption to withhold records, an agency must "provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977); *see also Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).

of the agencies' searches and their withholding of some records. We review the district court's grants of summary judgment *de novo*.

## A.

Kowal first challenges the adequacy of the searches made by the FBI, ATF, and DEA. An agency must demonstrate it "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Watkins Law & Advoc., PLLC v. Dep't of Justice*, 78 F.4th 436, 442 (D.C. Cir. 2023) (cleaned up). The adequacy of a search is "determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (cleaned up). We consider whether the agency's search was reasonable based on the specific information requested and the agency's efforts to produce that information.

To facilitate judicial review, an agency usually provides an "affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials … were searched." *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "Agency affidavits are accorded a presumption of good faith," and we will not credit "[m]ere speculation that … uncovered documents may exist" as a basis for finding an agency's search inadequate. *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200–01 (D.C. Cir. 1991).

### 1.

Kowal first argues she presented evidence the FBI, ATF, and DEA overlooked responsive records. Kowal possesses over 200 multimedia items from Troya's trial, some of which, for instance, explicitly mention the DEA in the file name. The

agencies did not disclose these records in response to her FOIA request. Kowal maintains these omissions are sufficient evidence to preclude summary judgment because she has raised a factual dispute about the adequacy of the agencies' searches.

We disagree. At best, Kowal has established the agencies may have missed some records in their searches. But a "reasonable and thorough search" may still miss records. *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003); *see also Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995) ("[T]here is no requirement that an agency produce *all* responsive documents."). Agencies are not required "to examine virtually every document in [their] files" or "follow[] an interminable trail of cross-referenced documents." *Steinberg v. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994). We focus on the process, not the results, when determining the adequacy of a FOIA search. *See, e.g.*, *Safecard*, 926 F.2d at 1201.

We hold the agencies' searches were reasonable in light of Kowal's particular requests. In identical requests to the FBI, ATF, and DEA, Kowal asked for "all … records … pertaining to any investigation, arrest, indictment, conviction, sentencing, incarceration, and/or parole" of Troya. Kowal specified Troya's criminal proceeding and federal charges and represented that she was requesting the information for Troya's habeas proceedings. The framing of Kowal's requests directed the agencies toward their criminal investigation databases. The FBI searched its Central Records System, which "spans the entire FBI organization and encompasses the records of FBI Headquarters … , FBI Field Offices, and FBI Legal Attaché Offices … worldwide." The ATF similarly searched its N-Force database and Treasury Enforcement Communications System, which are "the two systems of records where ATF

records of criminal investigations are housed." The DEA searched its Investigative Reporting and Filing System, which included a "worldwide search for DEA records, including records maintained at field offices."

Troya was a criminal defendant, and Kowal sought materials about his criminal investigation. The FBI, ATF, and DEA each searched their criminal investigation databases based on Kowal's specific records request. They were not required to do more. "The agency is not required to speculate about potential leads." *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996) (cleaned up).

Moreover, Kowal contends the agencies' searches were inadequate because they failed to uncover additional trial records in her possession that she surmises the agencies should have produced. But given that entities not subject to these FOIA requests—including local law enforcement and the U.S. Attorney's office in Florida—were involved in investigating and trying Troya, Kowal has not supported her inference. Our review of the record and the omitted materials does not "raise[] substantial doubt" about the reasonableness of the searches. *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (cleaned up). If Kowal believes the agencies failed to turn over specific records from Troya's trial and wants the agencies to pursue records related to her trial exhibits, she can submit a second, more specific FOIA request. *See Kowalczyk*, 73 F.3d at 389. But she fails to demonstrate the agencies' searches were inadequate.

2.

Second, Kowal challenges the scope of the agencies' searches, asserting that the agencies narrowly construed her requests, failed to use all relevant keywords, and failed to search all appropriate databases.

Kowal first contends the FBI and ATF failed to construe her search requests accurately, both by not searching for all records mentioning Troya and by improperly limiting searches to only certain records systems.[2] Yet Kowal specifically requested records pertaining to the federal criminal investigation and prosecution of Troya and detailed his federal charges and criminal proceedings in the subject line of her request.

As explained in the previous section, the FBI and ATF properly explained that they searched all relevant databases for investigation files related to the criminal matter Kowal referenced in her FOIA request. The ATF explained it construed Kowal's request as one for "records of ATF's role in the federal criminal investigation of Daniel Troya" and accordingly searched its only two databases with records on criminal investigations. For similar reasons, the FBI clarified it did not need to search beyond its Central Records System because any information related to Troya's criminal prosecution would be indexed there.

Agencies have the discretion to construe requests reasonably and conduct flexible and targeted searches within their internal records systems. Agencies do not need to honor unreasonably burdensome requests, boiling the ocean in search of responsive records. *See, e.g.*, *Nation Magazine*, 71 F.3d at 891–92.

Kowal does not rebut the agency affidavits or provide any "evidence of agency bad faith." *See Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980). Rather, she only speculates that the FBI and ATF possess other records about Troya. But "[m]ere

---

[2] Kowal does not appeal the district court's conclusion that the DEA properly searched its databases.

speculation" is insufficient to demonstrate the agencies' searches were inadequate. *See Safecard*, 926 F.2d at 1201.

Second, Kowal maintains the FBI, ATF, and DEA did not conduct adequate searches because they failed to search for records mentioning Troya's alias or to search using phonetic variations of Troya's name. Agencies have flexibility when searching for responsive records and so may conduct phonetic or alias searches when these searches are likely to produce additional, responsive records. Such variant searches, however, are not always required. *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993). We review only whether the methods used "can be reasonably expected to produce the information requested," *Oglesby*, 920 F.2d at 68, and whether the agency's search was "tailored to the nature" of the FOIA request, *Campbell v. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998).

Given the parameters of Kowal's request and because the agencies located Troya's criminal investigation files, it was reasonable for them not to search using Troya's alias. Kowal only requested records "pertaining to any investigation, arrest, indictment, conviction, sentencing, incarceration, and/or parole of Daniel Troya." The DEA explained that it maintains records related to criminal investigations in its Investigative Reporting and Filing System, which is indexed by name and date of birth. The DEA searched the system and found five criminal investigative files for Troya. Because the DEA located the files mentioned in Kowal's request, there was no need to separately search for additional records indexed under Troya's alias. Similarly, the ATF and FBI also detailed how they maintain criminal and investigatory files indexed by name, social security number, or date of birth, and found responsive investigative files concerning Troya's prosecution with searches tailored for their databases. Any mention of the alias "Homer" that Kowal believes could be found through an

alternative search is not responsive to her request for records related to the investigation and trial "of Daniel Troya." Nor is it "obvious" that Troya would be referenced only by his alias in any agency database. *See Am. Oversight v. Dep't of Health & Hum. Servs.*, 101 F.4th 909, 923–24 (D.C. Cir. 2024). Once the agencies found their criminal investigative files pertaining to Troya's capital case, it was reasonable not to search further.

Kowal merely speculates the agencies possess additional records in which Troya was identified only by his street name. But that is insufficient to demonstrate the agencies' searches were unreasonable or performed in bad faith.

\* \* \*

In sum, the FBI, ATF, and DEA followed Kowal's specific requests to locate records relevant to Troya's criminal case and demonstrated that their search methods were reasonable.

B.

Kowal also challenges the agencies' reliance on FOIA Exemptions 3, 6, 7(C), 7(D), and 7(E) to withhold records.[3] Agencies may demonstrate the applicability of an exemption by affidavit. And "an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Judicial Watch, Inc. v. Dep't of Defense*, 715 F.3d 937, 941 (D.C. Cir. 2013) (per curiam) (cleaned up). We hold

---

[3] The FBI and DEA also withheld records pursuant to FOIA Exemption 7(F), 5 U.S.C. § 552(b)(7)(F). The district court did not rule on the applicability of this exemption because all records withheld under 7(F) were also withheld under 7(C). We agree the records are exempt under Exemption 7(C), so it is unnecessary to determine whether Exemption 7(F) also justifies withholding these records.

the agencies were justified in withholding certain records under these exemptions.

1.

Exemption 3 protects records "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). The FBI invoked this exemption to withhold a narrative summary of a wiretap conversation, as required by the Wiretap Act, 18 U.S.C. §§ 2510–12. Kowal does not dispute the record is subject to Exemption 3's protections. She claims instead that the record should be released under the public domain doctrine because it summarizes wiretaps introduced at Troya's trial.

The public domain doctrine provides that "materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999). But this exception is "narrow" and entitles "the requester [to] receive no more than what is publicly available." *See id.* at 553–55. Courts are forbidden "from prying loose from the government even the smallest bit of information that is properly" withheld. *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983).

Kowal alleges only that the wiretapped conversations were made public at Troya's trial, not that the FBI's narrative summary of those conversations was made public. An agency's summary is not the same as the conversation itself. Kowal has not shown "there is a permanent public record of the exact" record she seeks. *Davis v. Dep't of Justice*, 968 F.2d 1276, 1280 (D.C. Cir. 1992). The public domain doctrine does not defeat the FBI's withholding under Exemption 3.

12

2.

The FBI, ATF, and DEA invoked FOIA Exemptions 6 and 7(C) to withhold the names and other identifying information, including addresses and phone numbers, of witnesses and law enforcement personnel involved in Troya's investigation. FOIA Exemption 6 protects "personnel … and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). FOIA Exemption 7(C) protects "records or information compiled for law enforcement purposes … [that] could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C). When, as here, the request is for records compiled for law enforcement purposes, the information protected by Exemption 6 is a subset of that protected by Exemption 7(C), so we need only analyze the latter. *Roth v. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011).

When reviewing an agency's reliance on Exemption 7(C), we "must balance the privacy interests involved against the public interest in disclosure." *SafeCard*, 926 F.2d at 1205. There must be "substantial probability that the disclosure [of information] will lead to the threatened invasion [of privacy]." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 878 (D.C. Cir. 1989). We "apply a more deferential attitude toward the claims of 'law enforcement purpose' made by a criminal law enforcement agency" because "inadvertent disclosure of criminal investigations, information sources, or enforcement techniques might cause serious harm to the legitimate interests of law enforcement agencies." *Pratt v. Webster*, 673 F.2d 408, 418 (D.C. Cir. 1982).

Kowal argues that the agencies failed to justify their withholdings. We disagree. The FBI, ATF, and DEA explained

that they redacted names and other personal information, such as telephone numbers, addresses, and confidential source numbers, to prevent "possible harassment" or "derogatory inferences and suspicion" against the personnel and witnesses for their involvement in a gang murder investigation. These explanations are sufficient to demonstrate that the disclosure of the withheld information would threaten privacy interests. *Schrecker v. Dep't of Justice*, 349 F.3d 657, 666 (D.C. Cir. 2003).

Moreover, Kowal fails to establish any cognizable public interest in disclosure. There is no public interest in disclosure "unless there is compelling evidence that the agency denying the FOIA request is engaged in illegal activity, and access to the [requested information] … is necessary in order to confirm or refute that evidence." *Safecard*, 926 F.2d at 1205–06. Kowal provides no evidence of agency misconduct. Instead, she merely speculates that the government may have exculpatory evidence in Troya's capital case and that this implicates the public interest. Our caselaw is clear that "the requester must establish more than a bare suspicion in order to obtain disclosure." *CREW v. Dep't of Justice*, 746 F.3d 1082, 1094 (D.C. Cir. 2014) (cleaned up); *see also Roth*, 642 F.3d at 1178 (same). Where there is no identifiable public interest, the privacy interest protected by Exemption 7(C) prevails because "something, even a modest privacy interest, outweighs nothing every time." *Horner*, 879 F.2d at 879.

Kowal also argues the public domain doctrine should overcome the agencies' reliance on Exemption 7(C) for some withheld trial records and witness names. Although she provided the district court with a list of testifying witnesses and transcripts of their testimony, these trial records demonstrate only that those specific witnesses testified at trial. The records do not link witnesses to particular documents or to the

information provided by that source. Because the specific information Kowal seeks has not been publicly disclosed, she cannot benefit from the public domain doctrine. *See Afshar*, 702 F.2d at 1130.

Kowal also specifically challenges the FBI's withholding of a testifying witness's plea agreement because the agreement was admitted into evidence at trial and discussed in open court. Trial records are generally considered public; however, to satisfy the public domain doctrine, they must be "preserved in a permanent public record." *Cottone*, 193 F.3d at 554. Records are no longer public when "destroyed, placed under seal, or otherwise removed from the public domain." *Id.* at 556. And our circuit has cast doubt on the proposition that "practically obscure" material remains public. *Davis*, 968 F.2d at 1279 (cleaned up). Here, the FBI has provided evidence that Troya's trial records, including the specified plea agreement, were not filed with the court and preserved. Because these records are not accessible on the public or electronic docket, the plea agreement does not fit within the public domain doctrine.

We hold that the FBI, ATF, and DEA properly justified their withholding of records under Exemption 7(C).

3.

The FBI and DEA also relied on Exemption 7(D) to withhold information that "could reasonably be expected to disclose the identity of a confidential source … [or] information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). Kowal argues this exemption is inapplicable because the agencies failed to demonstrate that each source testified with an assurance of confidentiality and provided no "particularized findings for each source."

A source is "confidential" if he "provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993). For example, in the context of a serious or violent crime we may infer an assurance of confidentiality because of the risks of exposing a "criminal enterprise … inclined toward violent retaliation." *Mays v. DEA*, 234 F.3d 1324, 1330 (D.C. Cir. 2000). Of course, we cannot "cloak in confidentiality anything anyone ever tells a law enforcement officer about any … crime." *Id.* Nonetheless, the government may invoke Exemption 7(D) if the circumstances, such as the nature of the crime investigated and the informant's relation to it, support an inference of confidentiality. *Id.* at 1329.

The circumstances here easily support an inference of confidentiality for each source in Troya's murder investigation.[4] The FBI plausibly asserted it was "especially important" to withhold information about sources in this context "given the subject matter … involves [the] murder of a family on a roadside, [and Troya] was convicted for such murder." Similarly, the DEA explained the sources provided information about an extensive drug trafficking operation and therefore faced a threat of violent reprisal. We have recognized implied assurances of confidentiality in similar circumstances. *See id.* (informants to a conspiracy to distribute crack cocaine); *Hodge v. FBI*, 703 F.3d 575, 578, 581–82 (D.C. Cir. 2013) (informants in a triple murder investigation). The grisly nature of Troya's crime, committed to further a drug trafficking

---

[4] Because the information was provided by sources with an implied assurance of confidentiality, we need not address whether some information was also provided pursuant to an express assurance of confidentiality.

operation, permits a fair inference of confidentiality for the sources in Troya's investigation.

Kowal also maintains that any source who expected to testify at trial cannot be considered confidential and is not protected by Exemption 7(D). But our circuit has long rejected this argument. "It would defeat the purpose of FOIA [E]xemption 7(D) to hold that the possibility of trial testimony to some or all of the substance of an FBI interview establishes that the source had no expectation that his identity would remain undisclosed." *Schmerler v. FBI*, 900 F.2d 333, 339 (D.C. Cir. 1990).

We note that Exemption 7(D) has no balancing test. If "production of criminal investigative records could reasonably be expected to disclose the identity of a confidential source or information furnished by such a source, that ends the matter." *Roth*, 642 F.3d at 1184–85 (cleaned up). The FBI and DEA demonstrated the sources here were confidential and reasonably justified withholding the information they provided in Troya's investigation.

4.

Kowal also challenges the FBI's and DEA's Exemption 7(E) withholdings. Exemption 7(E) allows agencies to withhold records when release would "disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The FBI and DEA invoked Exemption 7(E) to withhold records detailing investigative techniques, including technical information about computer databases and internal systems.

To justify withholding under Exemption 7(E), an agency must clear only a "low bar" by "demonstrat[ing] logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (cleaned up).

This low bar is easily cleared here. The agencies provided well-supported affidavits explaining how the information withheld could aid criminal elements. For example, the DEA's declarant explained the withheld information could provide drug traffickers information on how the agency prioritized its investigations, permitting would-be criminals to change their behaviors to avoid detection. Similarly, the FBI's affidavit explained that providing information on internal databases and file paths could aid in the commission of cyberattacks against the agency. The agencies logically connected withholding with preventing circumvention of the law.

Kowal also claims this withheld information is publicly available, but her evidence fails to support this contention. For example, she asserts that a requested DEA manual is public, providing an Amazon.com link. But this link is for an outdated manual, and Kowal does not allege the DEA officially released this manual. *See, e.g.*, *Medina-Hincapie v. Dep't of State*, 700 F.2d 737, 742 n.20 (D.C. Cir. 1983) (observing an unauthorized disclosure does not waive a FOIA exemption). Nor does Kowal demonstrate the agencies merely withheld information on ordinary law enforcement tactics already known to the public. Instead, the agencies' affidavits detail how the agencies were protecting "methods … [the agency] considers meaningful … [which] can reveal law enforcement techniques and procedures." *Shapiro v. Dep't of Justice*, 893 F.3d 796, 800 (D.C. Cir. 2018).

The FBI and DEA met their burden to explain how disclosure of the information could reasonably be expected to risk circumvention of the law under Exemption 7(E).[5]

\* \* \*

For the foregoing reasons, the agencies properly responded to Kowal's FOIA requests. We therefore affirm the grants of summary judgment to the FBI, ATF, and DEA.

*So ordered.*

---

[5] Kowal also challenges the adequacy of the agencies' *Vaughn* indices and the appropriateness of redactions. Her arguments largely mirror those made against the FOIA exemptions, and they similarly fail.