**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| LAWRENCE P. KALBERS, | No. 24-1048 |
| *Plaintiff - Appellee*, | D.C. No. 2:18-cv-08439-FMO-PJW |
| v. | |
| DOJ - UNITED STATES DEPARTMENT OF JUSTICE, | OPINION |
| *Defendant*, | |
| VOLKSWAGEN AG, | |
| *Intervenor-Defendant, Appellant*. | |

| | |
|---|---|
| LAWRENCE P. KALBERS, | No. 24-1477 |
| *Plaintiff - Appellee*, | D.C. No. 2:18-cv-08439-FMO-PJW |
| v. | |
| DOJ - UNITED STATES DEPARTMENT OF JUSTICE, | |
| *Defendant - Appellant*, | |

VOLKSWAGEN AG,

   *Intervenor-Defendant*.

Appeal from the United States District Court
for the Central District of California
Fernando M. Olguin, District Judge, Presiding

Argued and Submitted May 16, 2025
Pasadena, California

Filed January 30, 2026

Before:  Milan D. Smith, Jr.[*] and Ryan D. Nelson, Circuit
Judges, and David A. Ezra, District Judge.[**]

Opinion by Judge R. Nelson

---

[*] This case was submitted to a panel that included Judge Ikuta.  Following Judge Ikuta's death, Judge M. Smith was drawn by lot to replace her.  *See* Ninth Cir. Gen. Order 3.2.h.  Judge M. Smith has read the briefs, reviewed the record, and listened to oral argument.

[**] The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation.

# SUMMARY[***]

## Freedom of Information Act

The panel reversed in part and vacated and in part the district court's order, issued in response to a Freedom of Information Act (FOIA) request, requiring the disclosure of six million documents.

Lawrence Kalbers sought every document Volkswagen AG turned over to federal prosecutors as part of its criminal plea deal with the Department of Justice (DOJ). DOJ obtained the documents in question through a grand jury investigation. All but four of the six million documents are labeled as responsive to a grand jury request.

FOIA Exemption 3 provides that FOIA does not apply to matters that are specifically exempted from disclosure by statute. Federal Rule of Criminal Procedure 6(e), which prevents government attorneys from revealing a matter pending before a grand jury, qualifies as a statute under Exemption 3.

The panel held that revealing documents only in the government's possession because of a grand jury subpoena compromises the integrity of the grand jury's deliberative process. Here, Rule 6(e) bars disclosing nearly all the six million documents subject to Kalbers's FOIA request because Kalbers seeks documents the Government obtained through a grand jury subpoena—and through no other means. Accordingly, the panel reversed the district court's

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

order requiring disclosure of these documents. With respect to four documents lacking a Rule 6(e) label, the panel vacated and remanded for the district court to evaluate whether the government must disclose the documents.

## COUNSEL

Daniel Jacobs (argued), Law Office of Daniel Jacobs, Los Angeles, California, for Plaintiff-Appellee.

Sean R. Janda (argued) and Daniel Tenny, Attorneys, Appellate Staff; Brian M. Boynton, Principal Deputy Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; Alarice M. Medrano, Assistant United States Attorney, E. Martin Estrada, United States Attorney; Office of the United States Attorney, United States Department of Justice, Los Angeles, California; for Defendant-Appellant.

Morgan L. Ratner (argued), Sullivan & Cromwell LLP, Washington, D.C.; Robert J. Giuffra Jr., Andrew J. Finn, Suhana S. Han, and Leslie B. Arffa, Sullivan & Cromwell LLP, New York, New York; for Intervenor-Defendant-Appellant.

Katie Lynn B. Townsend, Mara Gassmann, Adam A. Marshall, and Ellen Goodrich, The Reporters Committee for Freedom of the Press, Los Angeles, California, for Amicus Curiae the Reporters Committee for Freedom of the Press.

**OPINION**

R. NELSON, Circuit Judge:

Lawrence Kalbers seeks to expose what he calls Volkswagen's "sweetheart" criminal plea deal with the Department of Justice (DOJ). He filed a Freedom of Information Act (FOIA) request seeking every document Volkswagen turned over to federal prosecutors. Normally, FOIA requires the government to disclose information in its possession. But there are exemptions. One of those exemptions is a problem for Kalbers—DOJ obtained these documents only through a grand jury subpoena. All but four of the six million documents are labeled as responsive to a grand jury request. Federal law normally forbids government attorneys from revealing anything that occurs in a grand jury room. Fed. R. Crim. P. 6(e). FOIA, in turn, exempts disclosure of any information protected by federal law.

That exemption governs. The file compiled for a grand jury subpoena—like the subpoena itself—is a "matter" before the grand jury under Federal Rule of Criminal Procedure 6(e). Disclosing the requested documents necessarily reveals that a grand jury subpoenaed them. Because the government possessed these documents only through the criminal investigation, the documents are entitled to the same rule of secrecy that governs the subpoena itself. Thus, the documents at issue are exempt from FOIA. We therefore reverse in part and vacate in part the district court's order and remand for it to consider disclosure of the four documents lacking a Rule 6 label.

I

Ten years ago, DOJ began to investigate Volkswagen's use of "'defeat device' software." *Kalbers v. U.S. Dep't of Just.* (*Kalbers I*), 22 F.4th 816, 819 (9th Cir. 2021). This software "enabled certain diesel vehicles to fraudulently pass emissions tests." *Id.* Courts and commentators have dubbed this scandal "Dieselgate." *Id.* Volkswagen tampered with over 585,000 vehicles sold in the United States. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 959 F.3d 1201, 1208 (9th Cir. 2020). This conduct led Volkswagen to strike a plea agreement to settle criminal charges brought by DOJ, while facing hundreds of civil lawsuits. *Kalbers I*, 22 F.4th at 819; *see also In re Volkswagen*, 959 F.3d at 1207–09. Volkswagen's liability to federal and state regulators exceeded $20 billion. *In re Volkswagen*, 959 F.3d at 1209.

The scope of the appeal before us is narrower. We address the extent to which federal law requires DOJ to maintain the confidentiality of documents it obtained only while investigating the criminal charges. Volkswagen gave DOJ "millions of documents in response to a grand jury subpoena." *Kalbers I*, 22 F.4th at 819. Much of the publicly available information about this investigation comes from a 2017 Volkswagen Annual Report. According to the report, Volkswagen hired the law firm Jones Day "to carry out an extensive investigation of the diesel issue in light of the DOJ's . . . criminal investigations." Volkswagen then instructed Jones Day "to present factual evidence to the DOJ." The report also explains that Volkswagen and DOJ reached a plea agreement to "resolve US criminal law charges." The parties based the agreement on "Jones Day's factual findings as well as the evidence identified by the DOJ itself." DOJ's criminal charges wrapped up when it filed the

plea agreement with the U.S. District Court for the Eastern District of Michigan. *Kalbers I*, 22 F.4th at 819. But the public fallout from Dieselgate was far from over.

The scandal piqued the interest of many commentators and scholars. One of those scholars is Lawrence Kalbers, a professor at Loyola Marymount University. Kalbers seeks to determine whether DOJ offered Volkswagen a "sweetheart deal." To find out, Kalbers filed a FOIA request with DOJ seeking "all 'factual evidence' presented by Jones Day" to DOJ "as the term i[s] used on p[age] 295 of Volkswagen's 2017 Annual Report." DOJ denied Kalbers's FOIA request because the records were exempt as they were "compiled for law enforcement purposes." *Kalbers I*, 22 F.4th at 820.

Kalbers sought the documents in court. *Id.* DOJ provided a *Vaughn* index[1] listing 281 documents which Jones Day formally presented to DOJ. The parties call these documents the presentation documents. DOJ withheld most of the presentation documents under FOIA Exemption 7(A) and Exemption 3. Exemption 7(A) renders FOIA inapplicable to "records or information compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). Exemption 3 renders FOIA inapplicable to matters "specifically exempted from disclosure by statute." *Id.* § 552(b)(3).

DOJ moved for summary judgment, arguing that the FOIA exemptions authorized it to withhold the presentation

---

[1] "A Vaughn index 'is a government affidavit identifying the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption.'" *Kalbers I*, 22 F.4th at 820 n.1 (quoting *Aguirre v. U.S. Nuclear Regul. Comm'n*, 11 F.4th 719, 728 (9th Cir. 2021)); *see also Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C. Cir. 1973).

documents. The district court denied the motion without reaching whether the exemptions apply. Instead, the district court ordered DOJ to search for additional documents because Kalbers's FOIA request seeks all documents Jones Day submitted to DOJ, not only those formally presented to investigators.[2] Four months later, the district court ordered DOJ to "produce all responsive documents" to Kalbers's FOIA request along with a *Vaughn* index detailing which documents it sought to withhold. In response, DOJ determined that Jones Day provided nearly six million documents to federal prosecutors in response to the grand jury subpoena.

Based on the number of documents at issue, the district court appointed a special master to address any claimed FOIA exemptions. DOJ filed two petitions in the Eastern District of Michigan,[3] asking the court to protect the documents from disclosure under Federal Rule of Criminal Procedure 6(e). That rule prevents government attorneys from revealing a "matter" pending before a grand jury. *See* Fed. R. Crim. P. 6(e). DOJ explained that the "vast majority of" the requested records "were produced by Jones Day with the label 'FOIA Confidential – Produced Pursuant to Rule 6(e).'" Only four documents responsive to Kalbers's request "do not include this label." The Eastern District of Michigan transferred the petitions to the Central District of California under Rule 6(e)(3)(G). With the petitions in California, the

---

[2] The district court also denied Volkswagen's motion to intervene, which we reversed in *Kalbers I*, 22 F.4th at 828.

[3] A petition for a court "to disclose a grand-jury matter under Rule 6(e)(3)(E)(i) must be filed in the district where the grand jury convened." Fed. R. Crim. P. 6(e)(3)(F).

district court consolidated the matter with Kalbers's FOIA suit and referred the petitions to a special master.

Before the special master, DOJ submitted a declaration explaining that it received "approximately 5.9 million records" from Jones Day "in response to a subpoena issued by a federal grand jury." DOJ estimated that around 720,000 to 1.3 million records "were tagged by the government in the course of its investigation," leaving around 3.3 to 4.3 million records which "were not identified for review by government prosecutors."

The special master recommended that the district court deny DOJ's petitions. The special master wrote that it was unclear "which of the millions of records were actually presented to and/or considered by the grand jury, rendering it virtually impossible for the public to glean any information about the grand jury's investigation or deliberation." The special master also concluded that DOJ had not shown "that there is something inherent in the documents—e.g., witness lists, summaries of grand jury testimony, copies of subpoenas, and the like—that would reveal any information about the grand jury." Thus, the special master recommended that the documents subject to Kalbers's FOIA request "be produced in their entirety." The special master noted that Kalbers "agreed to limit his request by excluding all untagged records," thereby "leaving between 720,000 to 1.3 million tagged records to process."

DOJ and Volkswagen objected to the special master's recommendation. The district court overruled the parties' objections and denied the DOJ petitions in a minute order. DOJ and Intervener Volkswagen appealed.

## II

We have jurisdiction to review the district court's minute order under 28 U.S.C. § 1291. *See In re Sells*, 719 F.2d 985, 988 (9th Cir. 1983) (an order granting disclosure under Rule 6(e) is a final decision under § 1291). Contrary to Kalbers's contention, DOJ's original objection and petitions seek the same relief. Thus, the district court's minute order resolves the issue in the FOIA request and in the DOJ petitions, rendering it a final decision granting disclosure of documents under Rule 6(e). *See id.*; *In re Steele*, 799 F.2d 461, 464 (9th Cir. 1986). Nor did consolidation deprive DOJ and Volkswagen of their appellate rights to contest a final decision on the DOJ petitions. *See Hall v. Hall*, 584 U.S. 59, 67–68, 77 (2018).

"We review de novo a district court's interpretation of the Federal Rules of Criminal Procedure." *United States v. Brown*, 784 F.3d 1301, 1303 (9th Cir. 2015). The question is whether the DOJ can withhold the documents under Rule 6(e) because they are a "matter occurring before the grand jury." The district court agreed with the special master's recommendation that the "documents be produced in their entirety, subject to the restrictions to address burdensomeness concerns." Because that is a legal conclusion about the scope of Rule 6(e), we review the ruling de novo. *See Brown*, 784 F.3d at 1303.

## III

### A

We address whether FOIA requires the Government to disclose a file it only possesses because it was created "in response to" a grand jury investigation. Under FOIA, an agency "shall make the records promptly available to any

person" upon "any request for records" which meets the statutory requirements. 5 U.S.C. § 552(a)(3)(A).

Congress, however, recognized that the government possesses many documents that should remain confidential. FOIA thus has many exemptions. Relevant here, Exemption 3 provides that FOIA "does not apply to matters that are . . . specifically exempted from disclosure by statute." *Id.* § 552(b)(3). This incorporates Federal Rule of Criminal Procedure 6(e)(2)(B)(vi), which provides that "an attorney for the government" must "not disclose a matter occurring before the grand jury." *See also Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1113 (D.C. Cir. 2007) (Rule 6(e) qualifies as a statute under Exemption 3 of FOIA); Act of July 30, 1977, Pub. L. No. 95-78, 91 Stat. 319, 319–20. Thus, we must determine what "matter" means.

We have refused to adopt a precise test of what qualifies as a "matter" under Rule 6(e). Instead, we evaluate whether releasing information "would compromise 'the integrity of the grand jury's deliberative process.'" *In re Optical Disk Drive Antitrust Litig.*, 801 F.3d 1072, 1075 (9th Cir. 2015) (quoting *United States v. Dynavac, Inc.*, 6 F.3d 1407, 1414 (9th Cir. 1993)). Although the Rule does not define the term, a "matter" is ordinarily defined as a "subject under consideration." *Matter*, *Black's Law Dictionary* (12th ed. 2024); *see also Matter*, *Black's Law Dictionary* (4th ed. 1968) (defining "matter" as "subject-matter of controversy"). Thus, a rule that prohibits disclosing "matter[s] occurring before the grand jury" bars revealing any "subject" under the grand jury's consideration. Fed. R. Crim. P. 6(e)(2).

We have never addressed whether revealing documents only in the government's possession because of a grand jury

subpoena compromises "the integrity of the grand jury's deliberative process." *Optical Disk Drive*, 801 F.3d at 1077 (cleaned up). We follow the guidance of the "considerations inherent" in our prior decisions, *id.*, and hold that it does. First, courts consider several factors that prevent disclosure under Rule 6(e). Courts consider whether the government possesses documents only through a grand jury investigation, whether the documents reveal their source, and whether the request is coterminous with the grand jury file. Second, certain factors may allow disclosure under a preexisting-documents exception. But contrary to Kalbers's contention, that exception applies only when a requester seeks preexisting documents from a source independent of the grand jury investigation.

1

FOIA exempts disclosing a grand jury's subpoena file when the file consists of the only version of the documents in the government's possession and the documents themselves show that they were subject to a grand jury subpoena. This outcome flows from the grand jury's investigative function. A grand jury's core function is to investigate and decide whether someone has committed a crime. That power is broad. "While there are some limits on the investigative powers of the grand jury, there are few if any other forums in which a governmental body has such relatively unregulated power to compel other persons to divulge information or produce evidence." *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 433 (1983) (footnote omitted). This immense power generally flows through the prosecuting attorney. *See id.* at 429–30 & n.13. After all, the power of the prosecuting attorney to issue a subpoena to bring evidence before the grand jury is "grounded in the

grand jury investigation." *Lopez v. Dep't of Just.*, 393 F.3d 1345, 1349 (D.C. Cir. 2005).

To counter this broad investigative power, the law shields matters brought before the grand jury from public view. The Supreme Court has "consistently . . . recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Rehberg v. Paulk*, 566 U.S. 356, 374 (2012) (quoting *Sells Eng'g*, 463 U.S. at 424). Without secrecy protections, cooperating witnesses "would be hesitant to come forward voluntarily." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 219 (1979). And those who do come forward "would be less likely to testify fully and frankly." *Id.* The tradition of grand jury secrecy also safeguards the privacy interests of investigatory targets, some of whom may be "exonerated by the grand jury," but may face "public ridicule" for being called by the prosecution. *Id.* Thus, to match the broad scope of the grand jury's broad ability to investigate, "the scope of the secrecy is necessarily broad." *Fund for Const. Gov't v. Nat'l Archives & Recs. Serv.*, 656 F.2d 856, 869 (D.C. Cir. 1981).

The founders infused the tradition of secrecy into "our constitutional grand jury," which "was intended to operate substantially like its English progenitor." *Costello v. United States*, 350 U.S. 359, 362 (1956). Congress later spelled out the details of these principles through Rule 6(e), which "codifies the traditional rule of grand jury secrecy." *Sells Eng'g*, 463 U.S. at 425. The Rule has only "limited exceptions." *Fund for Const. Gov't*, 656 F.2d at 868.

Courts applying Rule 6(e) consistently find that items requested by the grand jury through subpoena are presumptively protected from disclosure. *See Standley v.*

*Dep't of Just.*, 835 F.2d 216, 218 (9th Cir. 1987) (Rule 6 protects "the strategy or direction of the [grand jury's] investigation"). As the D.C. Circuit explained, when a party "seeks [documents] from an entity whose possession of [those documents] is directly linked to its role relating to the grand jury investigation[]," Rule 6(e) bars disclosure because "revelation in [that] particular context would in fact reveal what was before the grand jury." *Fund for Const. Gov't*, 656 F.2d at 870. Indeed, Rule 6(e) prohibits disclosing materials that "would reveal something about the grand jury's identity, investigation, or deliberation." *Labow v. United States Dep't of Just.*, 831 F.3d 523, 529 (D.C. Cir. 2016); *see also Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980) (en banc).

Under these principles, secrecy over the grand jury investigation protects large swaths of materials. Rule 6(e) unquestionably protects the "identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." *Dresser*, 628 F.2d at 1382. The subpoena itself—or the list of documents or witnesses requested by the grand jury—fits comfortably on this list. *See Lopez*, 393 F.3d at 1350 ("All grand jury subpoenas (be they *ad testificandum* or *duces tecum*) and therefore their dates of issuance fall within FOIA's third exemption."); *see also, e.g.*, *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1097 (7th Cir. 1992) (material can fall within Rule 6(e)'s protection if its disclosure "would reveal the identities of targets" of the grand jury's investigation).

If Rule 6(e) protects the grand jury's request for documents, the Rule likewise protects the file prepared in response to that request. The file is susceptible to reverse-engineering. Subpoenaed documents "when considered in

the aggregate and in their relationship to one another, make possible inferences about the nature and direction of the grand jury inquiry." *In re Grand Jury Proceedings*, 851 F.2d 860, 865 (6th Cir. 1988) (citations omitted).

"[T]he selection and compilation of documents by counsel" reveals "important aspects of his understanding of the case." *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) (citation omitted). After all, each time an attorney decides to include a document in the set, the attorney decides that the document is relevant to some predetermined criteria for inclusion. *See id.* In the context of the attorney work-product protection, many courts have recognized that curation reveals the attorney's "thought processes and theories regarding th[e] litigation" by demonstrating which arguments are stronger, weaker, or more likely to draw additional probing during depositions. *In re Allen*, 106 F.3d 582, 608 (4th Cir. 1997); *accord Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1329 (8th Cir. 1986).

In the context of a grand jury subpoena file, the curating attorney's thought process is more apparent: Is the document at issue responsive to the subpoena? One need only to flip through the compiled file and observe patterns to figure out the time periods, individuals, and subject matters the grand jury was investigating. *See* 1 *Wright & Miller's Federal Practice & Procedure* § 107 (5th ed. 2023) (Rule 6(e) prohibits disclosure of information that would reveal "the types of crimes being examined" and "the identity of the target and subjects of the investigation"). On the other hand, the lack of documents related to a particular time, individual, or subject matter would permit the inference that the grand jury did not view those matters as worthy of investigation. Once these patterns are known, even lay people can reverse engineer the subpoena itself and thus

impermissibly reveal "matters occurring before the grand jury." *See McDonnell v. United States*, 4 F.3d 1227, 1246, 1248 (3d Cir. 1993).

To be sure, few cases have held that the subpoena file is itself protected by Rule 6(e).  But parties rarely present the issue to the courts; and the few times the parties contested the issue, the court remanded to the lower court to determine whether the government could release documents without revealing that they were part of the grand jury file.

The case on the margin is *Senate of Puerto Rico ex rel. Judiciary Committee v. U.S. Department of Justice*, 823 F.2d 574 (D.C. Cir. 1987).  There, the D.C. Circuit noted that the Government had not submitted evidence supporting the district court's finding that the documents "were compiled from an investigation culminating in and used in a grand jury proceeding," *id.* at 584 n.33, and remanded for further fact-finding, *id.* at 583.  Most cases are not on the margins. In those cases, the courts presume that requests for the intact jury subpoena file are exempt from FOIA.  *See, e.g*, *Labow*, 831 F.3d at 529 ("If the documents would reveal to the requester that they had been subpoenaed, we would agree."); *United States v. Stanford*, 589 F.2d 285, 291 n.6 (7th Cir. 1978) ("A general request for 'all documents collected or received in connection with the investigation of antitrust violations,' for example, would be in effect a disclosure of the grand jury proceedings." (cleaned up)).

A subpoena is a tool of investigation.  Rule 6(e) prevents disclosing the grand jury's investigation.  Since revealing the results of a subpoena generally reveals the contents of the subpoena itself, the only question is whether it is possible to reveal the subpoenaed documents without revealing the subpoena.  Kalbers contends that it is possible under caselaw

that allows releasing documents that preexist the grand jury investigation.  As explained below, however, those cases apply only when the documents come from at least one source independent of the grand jury.

2

Kalbers points to two additional factors we have considered in our prior cases.  According to Kalbers, Rule 6(e) does not apply because he seeks the documents for their "own sake rather than to learn what took place before the grand jury" and because "disclosure will not compromise the integrity of the grand jury process."  Kalbers borrows this language from our opinions in *Dynavac*, 6 F.3d 1407, and *Optical Disk Drive*, 801 F.3d 1072, which are part of a broader line of cases in which a party seeks "documentary information coincidentally before the grand jury" from some other source. *Fund for Const. Gov't*, 656 F.2d at 870 (citing *Dresser*, 628 F.2d at 1383).  Kalbers errs by transposing these cases out of their specific context.

Start with *Dynavac*.  There, the IRS issued a summons to a private corporation seeking its business records for a civil tax investigation.  6 F.3d at 1409.  The corporation resisted, contending that it could not disclose the requested materials under Rule 6(e) because it had once produced the documents to a grand jury. *Id.* at 1410.

This attempt at clever lawyering drove our analysis.  In context, the question was whether a private party can shirk its obligations in an independent discovery process—unrelated to the grand jury—simply because it had once presented the material to a grand jury.  But "it is not the purpose of the Rule to foreclose from all future revelation to proper authorities the same information or documents which were presented to the grand jury." *Id.* at 1411 (quoting

*United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir. 1960)). "Thus, if a document is sought for its own sake rather than to learn what took place before the grand jury, and if its disclosure will not compromise the integrity of the grand jury process, Rule 6(e) does not prohibit its release." *Id.* at 1411–12.

It bears repeating that the IRS had an independent source for the corporation's records. The IRS could issue summons to "examine any books, papers, records, or other data which may be relevant or material to" its inquiry. 26 U.S.C. § 7602(a)(1). In those circumstances, courts have made clear that the "existence of a grand jury proceeding neither adds to nor detracts from" existing legal obligations. *Dresser*, 628 F.2d at 1383.

This meant that the IRS could obtain the requested documents without any indication of the grand jury's request. Indeed, the IRS sought specific business records identified by their content, "without mention of the grand jury." *Dynavac*, 6 F.3d at 1414. And the IRS directed the summons to the company, not the government. *Id.* Thus, enforcement of the summons did not reveal that a grand jury requested the company's records.

And even with this attenuated link between the documents and their role in the grand jury investigation, *Dynavac* emphasized that disclosure is improper if it "compromise[s] the integrity of the grand jury process." 6 F.3d at 1412. The opinion "allow[ed] for the possibility" that "learning *which* documents were subpoenaed by the grand jury may disclose the grand jury's deliberative process." *Id.* at 1412 n.2.

*Optical Disk Drive* also considered a request for records which the government possessed independent of the grand

jury's investigation. As part of a criminal antitrust investigation, the FBI secretly recorded conversations involving an employee of one of the companies under investigation. 801 F.3d at 1074. The FBI made the recordings two months before the grand jury issued a subpoena to the employee seeking his testimony. *Id.* After the grand jury investigation concluded, Dell, Inc., in a separate civil antitrust action, subpoenaed DOJ seeking "recordings of conversations" related to DOJ's earlier criminal investigation. *Id.* The employee moved to quash Dell's civil subpoena, arguing that DOJ's disclosure of the recordings would violate Rule 6(e) because the recordings were a "matter occurring before the grand jury." *Id.* The district court denied the motion to quash, and we affirmed.

As in *Dynavac*, Dell requested materials which overlapped with the grand jury investigation. *See id.* DOJ created and possessed the FBI recordings in *Optical Disk Drive* independent of the grand jury proceeding. So the documents' disclosure would not have necessarily implicated the grand jury or the nature and scope of its criminal investigation. *See id.* at 1078 ("[The party seeking to prevent disclosure] has not demonstrated that the tape recordings and transcripts were a product of the grand jury's investigation."). And documents produced could have come from files the government possessed independent of the grand jury proceeding.

The Second and D.C. Circuit cases on which we relied also considered whether the requester sought the documents from an independent source. *Dresser* allowed a limited exception to the rule of secrecy because Rule 6(e) does not require "a veil of secrecy be drawn over all matters occurring in the world *that happen to be investigated* by a grand jury." 628 F.2d at 1382 (emphasis added) (citing *Interstate Dress*

*Carriers*, 280 F.2d at 54). Even under a broader reading of the Rule, "courts should permit disclosure of documents in the hands of private parties, independently identified and sought for a lawful and independent purpose." *Id.* at 1383 n.37.

An independent source obscures the precise source. When the documents are also in the possession of an independent source—or the government obtained the documents from another source independent of the grand jury—the requester has no way of knowing which documents are also a part of the document set curated for the grand jury. In other words, the curation is broken and any overlap between the sets of documents becomes purely "coincidental[]." *Fund for Const. Gov't*, 656 F.2d at 870. Because "jury proceedings are genuinely secret, other agencies and courts will not know the subject matter of the grand jury investigation and thus will not be able to determine whether their own inquiry would overlap that of the grand jury." *Dresser*, 628 F.2d at 1383. But when a requester "seeks information from an entity whose possession of that information is directly linked to its role relating to the grand jury investigations," revelation "in [that] particular context would in fact reveal what was before the grand jury." *Fund for Const. Gov't*, 656 F.2d at 870.

The district court erred by ignoring this context. Citing *Optical Disk Drive*, the special master focused her analysis on whether the materials "are directly associated with the grand jury process" and "reveal the inner workings of the grand jury." This portion of the special master's recommendation also incorporated the district court's prior ruling that the documents may be released if they are "sought for [their] own sake" and disclosure does not "compromise the integrity of the grand jury." But as explained, in

*Dynavac* and *Optical Disk Drive*, we also considered whether the requested information was developed independently from the relevant grand jury proceeding or otherwise came from an independent source. Thus, the government may defeat a request to reveal documents subpoenaed by a grand jury by disproving any of the following: (1) that the documents are in governmental possession from an independent source; (2) that the documents were sought for a reason independent of the grand jury investigation; or (3) that disclosure of the documents would not otherwise compromise the integrity of the grand jury process. *Cf. Dresser*, 628 F.2d at 1383 n.37. The district court applied the second and third factors. It erred by ignoring the first. The documents are indisputably in the government's possession only through the grand jury subpoena—and not through any other source.

## B

With the relevant factors from our caselaw in mind, we apply them to Kalbers's request. Doing so, Rule 6(e) bars disclosing nearly all the six million documents subject to Kalbers's FOIA request. Kalbers seeks documents the Government obtained through a grand jury subpoena—and through no other means. On that fact alone, Rule 6(e) bars disclosure. But even applying the other two *Dynavac* factors, the special master misread Kalbers's request and concluded that he does not seek grand jury materials. The record says otherwise. Kalbers seeks to discover what criminal charges the grand jury considered. This fact also dooms the request. Applying any of the three relevant factors leads to the same result: Rule 6(e) bars disclosure of these documents.

Start with the factor the district court overlooked. Releasing the curated, intact grand jury file would "necessarily reveal a connection to a grand jury." *Labow*, 831 F.3d at 529–30. DOJ explains that it obtained the records "in response to a subpoena issued by a federal grand jury investigating [Volkswagen's] criminal conduct," and that it has the records "*because* of the grand jury investigation." As a result, disclosing all "factual evidence" "presented by" Volkswagen's counsel would necessarily reveal the compiled file produced in response to the grand jury's subpoena.

This is not a case where the commingling of documents subpoenaed by the grand jury and by other governmental agencies makes it impossible to determine which documents were obtained through which process. *Compare Senate of Puerto Rico*, 823 F.2d at 583 ("[H]ad the DOJ released these exhibits, along with the over 1,000 pages of non-grand jury material it did release, there is nothing in this record to suggest that the Senate . . . would have been able to determine *which* documents had been submitted to the grand jury." (footnote omitted)). Instead, all but four of the six million documents are stamped with a label reading: "FOIA Confidential – Produced Pursuant to Rule 6(e)."

The records themselves "reveal to the requester that they ha[ve] been subpoenaed by a grand jury." *Bartko v. U.S. Dep't of Just.*, 898 F.3d 51, 73 (D.C. Cir. 2018) (cleaned up). And the government cannot redact the labels without providing justification. That too would reveal the documents' connection to the grand jury, making the redaction meaningless. *See Labow v. U.S. Dep't of Just.*, 278 F. Supp. 3d 431, 445 (D.D.C. 2017).

The juxtaposition of six million marked documents to four unmarked documents puts this case squarely in the category contemplated by the D.C. Circuit in *Labow*. There, the D.C. Circuit remanded for the district court to determine "if the government's sole copies of the documents were marked as grand jury exhibits." *Labow*, 831 F.3d at 530. If so, "the documents at issue . . . necessarily evince their connection to a grand jury." *Id.* Worse, the number of documents, combined with Kalbers's broad request for "*all* 'factual evidence'" in the government's possession, makes it apparent that the six million documents (or any subset) are the documents requested by the grand jury. Thus, a reader may consider the documents "in the aggregate" and determine which topics the grand jury investigated and which topics it passed over. *See In re Grand Jury Proceedings*, 851 F.2d at 865. This file is "a product of the grand jury's investigation," and the government cannot produce it without "compromis[ing] the integrity of the grand jury's deliberative process." *Optical Disk Drive*, 801 F.3d at 1078.

We could end the matter there. But even considering the two additional factors at play in *Dynavac*, the result remains the same. On appeal, Kalbers claims that he seeks the documents for their "own sake rather than to learn what took place before a grand jury" because "research and public dissemination" is "an independent and legitimate purpose." While the purpose of his request may be legitimate, it is not independent. Kalbers's request specifically asks for all "factual evidence" "presented by Jones Day" to DOJ "as that term is used on p[age] 295 of Volkswagen's 2017 Annual Report." Kalbers contends that this request seeks information about Jones Day's "internal investigation of Volkswagen" rather than the grand jury proceeding. Not so.

It is hard to see what page 295 of the Annual Report references other than the grand jury proceeding.  The Annual Report makes clear that Volkswagen commissioned the internal investigation because of DOJ's "criminal investigation."  And immediately after stating that "Jones Day was instructed by Volkswagen to present factual evidence to the DOJ," the Annual Report states that Volkswagen and DOJ "entered into a Plea Agreement" "[t]o resolve US criminal charges."  Although a plea agreement can waive the Fifth Amendment right to a grand jury indictment, *see* Fed. R. Crim. P. 7(b), the reference to pending criminal *charges* raises the possibility the government had empaneled a grand jury.  At minimum, a well-informed researcher such as Kalbers likely read page 295 and questioned whether the prosecution presented the referenced documents to a grand jury.

Whether Kalbers's request references a grand jury proceeding, the documents are not "preexisting business records" under *Dynavac*.  As explained, *Dynavac* applied the "preexisting business records" exception because the IRS requested a new document collection directly from their original source, rather than from a grand jury.  *See* 9 F.3d at 1412.  Once an attorney curates a collection of documents, that collection becomes a product itself.  *Cf. Sporck*, 759 F.2d at 316.  Kalbers requests that product.

That Kalbers "agreed to limit his request by excluding all untagged records" does not save his request from Exemption 3's protections.  Kalbers now seeks the 720,000 to 1.3 million "records that were tagged by the government in the course of its investigation."  But this file of 1.3 million documents is still "a product of the grand jury's investigation."  *Optical Disk Drive*, 801 F.3d at 1078.  And in many ways, it is an even more protected list of documents.

Volkswagen's lawyers curated the file of 6 million documents to ensure that the included records responded to the grand jury's subpoena. Then, DOJ lawyers conducted a second level of curation to include only the documents most responsive to the grand jury's concerns. This file is a far cry from the business records that "predated the grand jury investigation" in *Dynavac*. 6 F.3d at 1414.

Finally, the release of these records would "compromise the integrity of the grand jury process." *Id.* at 1412. The special master found otherwise because the documents at issue were "created for purposes independent of the grand jury proceeding," unlike "witness lists, summaries of grand jury testimony, copies of subpoenas, and the like."[4] Thus, the special master appeared to believe that Rule 6(e) applies only to materials created for or by the grand jury. That cannot be. "Disclosure of a grand-jury matter—other than the grand jury's deliberations or any grand juror's vote— may be made to" certain government personnel. Fed. R.

---

[4] The district court also expressed concern that exempting disclosure "would allow any party that is being investigated by a grand jury to undermine the goals of FOIA . . . by preventing the disclosure of documents by simply turning over all documents . . . to the grand jury." This concern is unfounded. FOIA does not give Kalbers a right to request information *from Volkswagen*. *See, e.g.*, 5 U.S.C. § 552(a)(3) (FOIA provides a right of access to "agency" records); *U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989) (FOIA was enacted to allow citizens "to know *what their government is up to*."). Thus, there cannot be a perverse incentive for private actors to turn over documents to a governmental agency to trigger a FOIA exemption, because FOIA does not apply to those private actors in the first place. To the extent that Kalbers may have some other legal entitlement to seek documents directly from Volkswagen—such as the Federal Rules of Civil Procedure—that would likely be more analogous to our holding in *Dynavac*, 6 F.3d at 1409.

Crim. P. 6(e)(3)(A).   So, as a textual matter, "matter[s]" occurring before the grand jury" must mean something more than just grand jury deliberations.   *Id.* 6(e)(2).   Plus, Rule 6(e) protects "the integrity of the grand jury process" as a whole—not just deliberations.   *Dynavac*, 6 F.3d at 1412; *see Standley*, 835 F.2d at 218 (Rule 6(e) covers "the identities of witnesses or jurors" and "the strategy or direction of the investigation" in addition to "the deliberations or questions of the jurors" (quoting *Fund for Const. Gov't*, 656 F.2d at 869)).   And other courts have concluded that Rule 6(e) protects preexisting documents turned over to the grand jury. *See, e.g.*, *Labow*, 831 F.3d at 529; *McDonnell*, 4 F.3d at 1246, 1248.

Whether the documents reveal the grand jury's deliberative process is not the only question.   Rule 6(e) bars revelation of any "matter" before the grand jury—and "matters" includes the investigation, too.   If the grand jury investigated Volkswagen's internal emails or technical documents, the Rule protects the fact of that investigation from disclosure.   The government cannot release those documents without revealing that the grand jury investigated them.   Thus, their release "would compromise 'the integrity of the grand jury's deliberative process.'" *Optical Disk Drive*, 801 F.3d at 1075 (quoting *Dynavac*, 6 F.3d at 1414).[5]

---

[5] Consistent with our precedent rejecting any per se approach, *see Dynavac*, 6 F.3d at 1412, we decide only the case before us.  We leave open the question, for example, whether the government must disclose an intact grand jury file without an independent source of the documents if nothing on the face of the documents reveals they were the subject of a grand jury subpoena.  *See Senate of Puerto Rico*, 823 F.2d at 583 (the government may not claim Rule 6(e) protection if the only indication that the documents were subject to a grand jury subpoena is a post-request representation by counsel).

IV

The government may disclose documents in its possession independent of a grand jury, even if duplicate documents also appear in a grand jury file. But the government has these documents only through a grand jury subpoena—and through no other source. There is a difference between producing a file that coincidentally overlaps with a grand jury subpoena file and producing the file itself. Commingling documents can obscure their source, thus creating one factor that may allow the release of documents subpoenaed by a grand jury without compromising "the integrity of the grand jury's deliberative process." *Dynavac*, 6 F.3d at 1414. That factor does not apply here. Thus, Rule 6(e) bars the disclosure of these documents, and Exemption 3 to FOIA applies.

We therefore reverse the district court's order requiring disclosure of the six million documents and vacate and remand for the district court to evaluate whether the government must disclose the four documents lacking a Rule 6 label.

**REVERSED IN PART, and VACATED AND REMANDED IN PART.**